Good morning, Your Honours, and may it please the Court. Eric Rodriguez from El Malvinian Myers, Pro Bono Counsel for Petitioner Mario Sandoval-Gomez. I'd like to reserve three minutes for rebuttal. Your Honours, nearly 15 years ago, an immigration judge found that Mr. Sandoval merited cancellation of removal, and he granted his application, which meant he had the right to remain in the United States. But due to various appeals, this long-time legal permanent resident with four adult children, all of whom are U.S. citizens, was deported and has been forced to remain in Mexico for over a decade. In this appeal, the government concedes that we are correct about the central case law, yet it claims that it does not matter. But it does. Because the BIA misunderstood Supreme Court precedent, it incorrectly believed that it could not consider Mr. Sandoval's undisputed, on-the-record testimony about his offense, nor permit him to supplement it, for him to show that he is eligible for cancellation of removal, which is a step necessary for him to be reunited with his family in the United States. Indeed, because the limited conviction records in this case do not reveal how Mr. Sandoval-Gomez committed his offense, testimony, again, already on the record, unrebutted, and which he has offered to supplement, is necessary for him to show that he did not commit a disqualifying offense. Yet the BIA incorrectly held that it could not consider his testimony that was already in the record. To correct the BIA's error on the most crucial point, this case must be remanded for Mr. Sandoval to supplement the record and show that he is eligible for relief. And is the reason the BIA did what they did, and the position the government takes now, that they believe that in these circumstances, the alien is limited to Shepard-type documents? Is that really the basis of the government's position? That's right, Your Honor. That's what the BIA order states, that the BIA believed it could not consider records outside of the typical Shepard conviction records, and so it thought the testimony was not part of what it could consider for the applicant to show that he is eligible for relief. And then the remand that this court made, did it place any such limitation on the BIA? It did not place that limitation or any such limitation on the BIA. It simply said that the BIA had not ruled on whether he was eligible for cancellation of removal, and so it sent it back down to the BIA. At the BIA, we argued that the government had waived that argument, that he didn't merit cancellation of removal, since an IJ had already, in 2010, found that he did. The BIA disagreed with us, but in our BIA brief, we also said that if the government, if the BIA believed that he was not statutorily eligible, which would be step zero of cancellation of removal, then he should be permitted to provide additional testimony. And we pointed to the testimony already on the record that sheds light on how he committed his offense. So, could I ask, is it your position that if the testimony that already exists is credited, then he already gets relief? He doesn't actually need additional testimony? Your Honor, we believed if the BIA had reviewed the testimony that's already in the record, that the record is not inconclusive and that he would meet his burden. For example, it shows that he did not intend at any point to set any fire. This court in 2021, in this case, had said there's three ways of committing attempted arson. The question isn't whether he was convicted of attempted arson, but how did he commit it? Which of the three ways did he commit it? And we believe the existing testimony on the record will show that he did not commit it in the way that would be disqualifying for him. I was trying to figure out whether the BIA could itself just say, now that we know we can consider the testimony, he wins, or whether it needs to go to an IJ to make a credibility determination. Because I wasn't sure anyone had made a credibility determination really ever about this yet. Your Honor, we believe there was some sort of credibility determination made at the IJ. When Mr. Sandoval provided, supplied this testimony, it was in the cancellation of removal context. So, the IJ was weighing the equities to see whether he merited cancellation. And in that context, they asked about how his offense was committed. We see an attempted arson conviction here. Mr. Sandoval testified to it. And in his oral order, granting cancellation of removal, the IJ said that Mr. Sandoval indicated that he did not intend to set any fire, that he did not intend to harm anyone, and it considered that. So, it sounds like you're reading that recitation as saying that it was credible. I couldn't tell whether the IJ was just saying, here's what he testified. Because ultimately, the IJ did say that the positive equities outweighed the negative. But it seemed to put the crime on the negative balance, so it was a little hard to tell, I thought. But do you have a reason why we should read it the way you're saying? It's not 100% clear, Your Honor. But I would read it as favorably crediting it, because ultimately, he did grant the cancellation of removal. And so, looking at an attempted arson offense and seeing that, okay, yes, he sprinkled gasoline, but he did not attempt to set any fire. It's on the record, but there's no means to set a fire, for example. That sort of thing would support granting cancellation. And that's why the IJ, in our mind, had credited it favorably and pointed it out. It's correct that the IJ did not kind of parse the relevant statute, the divisibility of the statute in the four parts, and so on. And that's right, Your Honor, because that occurred in 2010. That was what I thought. Right. So, we have his testimony twice on this, so what more would need to be done? For example, Your Honor, we would flesh out the series of events to show, to support his testimony that he did not intend to commit any fire. For example, we can point out that he had no means to set a fire. There was no sort of planning involved, what were his goals in putting the gasoline, clarifying why there was no intent. So because the last time we were at the IJ, we had no motivation or incentive to show, okay, he's at step zero, eligible statutorily for it, and now let's develop direct lines of testimony to show why he would meet his burden. Now for the very first time back at the BIA, the burden was put back on us, and that's why we requested to go back to the IJ for the first time to prevent. Wasn't the burden always on you? I mean, you have to get entitlement to this discretionary relief. No, Your Honor, the very first time the burden was put on us to show that he's eligible for cancellation of removal under his attempted arson offense, and to show which of the three ways he committed it was back at the BIA in 2021. So in 2010, when this testimony was given to an IJ, we weren't debating whether he was statutorily eligible, and this court hadn't held that the attempted arson offense can be broken down into three ways under the modified categorical approach. Yeah, I mean, I think, you know, the case has gone on a long time. I'm trying to understand, you know, the BIA, it seems to both sides agree, misunderstood Pareda, but in terms of what needs to happen next, we have two rounds of testimony from your client about this, and we went back to, from this court's last remand to the BIA, there wasn't really a proffer of other evidence that you would show. We have the suggestion that maybe the mother would testify, I'm not sure what she would say or if she was even there, and the same with the ex-girlfriend. Your Honor, and the reason for that was that the BIA generally doesn't consider new evidence, it doesn't engage in fact-finding, and so we believe... That's fair, but you still, if you want to have more proceedings, usually you tell us or them, here's what we would do, and we don't have that. Well, Your Honor, the BIA did consider our request to remand, so it did see our request and say, okay, they want to go back to the IJ, now let me see, should I go back to the IJ? But their reason for that was not a good reason, which was that they can't consider it. Everyone seems to agree that's not correct. And you would put to the BIA then, in general terms, the kind of additional evidence you would submit. That's right, Your Honor. But it's also, it sounds like you're arguing an alternative, if I'm understanding correctly, because I think part of your argument is you don't even need additional evidence, you don't even need additional testimony because it already is in the record. Your Honor, we believe that if the BIA had evaluated the existing record, the existing client would win. But since the burden was placed on us for the very first time the last time at the BIA, and since it's on us by the preponderance of the evidence to show that he meets his burden, we would like to flesh out the series of events, since we've never had that chance. Okay, but is that argument in the alternative, or is that your only argument? Because I thought my exchange with you earlier was, if we read your position, I thought, we may or may not be persuaded by it, but I thought your position was, the earlier IJ made a credibility determination, this was treated as credible. Once that happens, once the BIA understands it can consider it, we just win. We don't need more testimony. Wasn't that your first position? Yes, Your Honor. It is in the alternative. Okay. But so what do you want? What's your first ask here, in terms of what should, if this goes back down, what do you want? Our first ask would be that it goes back down to the IJ, because we want to develop the factual record, and we believe it's most appropriate that the baseline procedure for that to happen at the IJ. Okay. That's nice of you, but wouldn't you rather, if we say the BIA can consider this material, wouldn't you say, A, we should win, but if you don't think we should win, we should get more evidence? Wouldn't that be the logic tree? I mean, it's nice of you to say that it has to go back to the IJ, but I just wondered, wouldn't you say there's enough in the record that the BIA ought to give you the win? Your Honor, we do believe that, because the existing record would be sufficient that if the BIA evaluated it. If they don't believe it, or they might say, you know, we're not equipped to evaluate the credibility on a cold record. That's right, Your Honor. The BIA could evaluate it, perhaps determine it doesn't meet, but allow him to remand back. If there's this ambiguity about whether the first IJ made a credibility determination, is that something we should evaluate, or we should ask the BIA to evaluate, or who gets to decide whether the first IJ made a credibility determination implicitly? We believe the BIA would evaluate that if it's the one looking at the existing record to see what he testified to as to the series of events. Why not send this back to the BIA and let them hear your positions on what should happen next? That is one of the paths that we believe is acceptable here, Your Honor. And so, would you be happy if we just say this goes to the BIA, or do you want us to say something about the BIA sending it to the IJ? We would prefer that it be sent back down to the IJ so we could further develop the  investigation. Yeah. I mean, my concern with that, I would, it's not clear to me why the BIA wouldn't get to evaluate that request in the first instance, and one thing that is somewhat concerning about your position is this idea where we need to have more evidence developed, but we haven't heard what that evidence would even be, you know? And I keep hearing, well, we're going to expand, we're going to flesh out, but it's not like the record's fair. There is testimony from your client saying, I didn't intend to set a car on fire, and that can be evaluated for what it's worth. And presumably, the other witnesses would say, yeah, that's exactly what happened to the extent they were there and saw it. Your Honor, yes, on that point, we believe that if the BIA evaluated it, and it believed that that would be sufficient, then it would grant, it would find that he's eligible for cancellation of removal, and if it finds that there's not enough evidence, then we would believe it would be permissible for the BIA to then decide that it should go back to the  Was the mother there? The mother, based on the record and the testimony, Your Honor, it is unclear at some points because he refers to she, but it's unclear whether he's referring to the mother or to her. I'm sorry, her mother was there, but it's unclear at some points whether the girlfriend was there. Whose mother? The girlfriend's mother? Yes. But you're saying now that the girlfriend and the girlfriend's mother would testify before the IJ if there was an opportunity? We believe, we would hope that we'd be able to get them to testify. But what would they say? I mean, we haven't been told anything about what the girlfriend or the mother would say about this. For example, Your Honor, they could say whether they saw that he had any means to light any fire and that would... They could say a lot of things, but what would they say? Right? I mean, we don't... There's nothing in the record that would give us any hint of that. I can't speak on that right now, Your Honor. Do you want to reserve the remaining time? Yes, thank you. Great.  Good morning, Your Honors. May it please the court. My name is Jocelyn Wright. I'm here on behalf of Respondent, the United States Attorney General. Let me first address Judge Boggs' comment earlier about what the government believes it can rely on, the Shepard documents only. That is not what happened in this case. When this court remanded to the Board of Immigration Appeals for a determination on Mr. Sandoval's eligibility for LPR cancellation of removal, it explicitly said, and this is at the record at, I believe, 404. I'm sorry, 405. Based on the record before us, we cannot determine how Sandoval Gomez committed the attempted arson offense. Thus, the record is inconclusive as to whether he is convicted of an aggravated felony. This is the BIA in 2021? No, this was the Ninth Circuit panel in 2021. It didn't say the record of conviction. It said the record. And the record, and keep in mind that the court was considering this case after Pareto already came down. And Pareto was explicit that whoever bears the burden of proof in immigration proceedings is not limited to considering just the Shepard documents. So what does this get us? It means that the Ninth Circuit already considered this entire record, including the testimony that's in it. And so this is inconclusive as to the aggravated felony question. But there was also a request in the BIA to supplement the record. Right. But as you kept pointing out, Your Honor, it has never been specified what evidence would be considered. No, I have that concern, but the BIA didn't say that. The BIA said, well, any evidence that could be developed would be irrelevant under Pareto because we couldn't consider the evidence.  But at the same time, he didn't submit any other documents into the evidence once the case was below. No, I have that concern myself. But at the same time, the BIA could have allowed him to do so. That would be their decision. Right. And the BIA did. The BIA said on remand, both parties have the opportunity to file any submissions. But they never said, if you want to have more testimony, you should tell us what it is, right? No. But file any submissions means including a proffer of, I want to testify that. And to that point, I just want to make clear, the consideration of testimony, even under Pareto, is very limited for the very limited purpose of determining under what part of the divisible statute was Mr. Sandoval convicted. His argument, or his proffer of testimony, and he says he doesn't even know what the ex-girlfriend and the ex-girlfriend's mother would testify to, is that he could say that he did not have the intent. But intent is irrelevant for purposes of determining whether or not, which part of the statute he was convicted under, because the entire statute under California law is a specific intent crime. Attempted arson under California law is a specific intent crime. You have to plead to that element in order to be convicted in the first instance. And so the question before this Court and the Board is, which part, attempt to burn, et cetera, two or three? And two and three, according to the previous panel, would not qualify as an aggravated felony. But I have yet to hear any evidence or any proffer that he would say, I pled guilty to three rather than one. Sorry, can you remind me what you think, if you think it's not intent, what does make the difference between three and one and two? Oh, no, no, it would be the, because the Court had said this is a divisible statute, and two and three. Right, so can you remind me, you're saying intent is not the difference, so what is the difference between, just remind me, what makes it one, two, or three? It's the attempt to burn is the only one. Because it fits the- Versus an act preliminary to. An act preliminary to. But an attempt isn't, I'm just confused then about your idea that intent isn't the relevant thing, because isn't that what attempt means? Well, but the evidence, okay, so stepping back a little bit, the testimony in the record and the evidence is, I think, goes towards either one or three. If it's one, he's an aggravated felon. If it's three, then he's not, under the Court's divisibility analysis, under the modified categorical approach. And how do we distinguish one and three? Whether it's intent to burn, right? Well, no, because he would have to say, my plea colloquy says that I pled guilty to three, not one. Or the prosecutor and my former attorney, my defense attorney, negotiated a plea and it was to three, not to one. That's the kind of evidence, that's the kind of proffer. Not any testimony about his, I didn't intend to burn it, because again, in order to be convicted under the statute- That's what Judge Freeland has asked. Oh, well, the third one is, commits preliminary act thereto, in furtherance of. Okay, so the preliminary act would be sprinkling the gasoline. And so what would bring it under one? Because it would be for, with the intent of burning the property. So intent is the difference? No, well, no, because intent- Had an intent to sprinkle the gasoline. Right. No, no, the intent to burn, the ultimate intent to burn the property that he sprinkled gasoline on. That is the intent for attempt, under the attempt statute. And California law is very clear on that. But then really, that argument is that he's, it's an aggravated felony no matter what, isn't it? And you haven't given us the distinction between the two. Because this court has said that it is a divisible statute. And I'm bound by what the court has said in the law of the case. The modified categorical approach makes people do funny things on both sides of the bench has been my observation. Can we go back to the point you made about the scope, what the relevance of the testimony is under Pareto? Because I didn't necessarily see this in the briefs, but your point is really what we're testifying to is what he pled to, and not, he can't be, your position would be essentially all this testimony that exists is not relevant, but I didn't see that point in the briefs. Well, it's not relevant because again, we're not re-litigating whether there was sufficient evidence for him to be convicted under the attempted arson statute. And that's basically what that intent, what that testimony goes to. Is his testimony about what happened not informative about what he pled to? In other words, doesn't it have some relevance to this? It could, but he hasn't said why it's relevant other than to say that I didn't intend to burn anything. But there is no... I never saw, I have the same concern as Judge Brest. This idea that it doesn't matter whether he intended to burn anything, I don't see anywhere in your brief the idea that it doesn't matter whether he intended to burn anything. Because we were not litigating the conviction, we were litigating the fact that the court has already found the record inconclusive, and that includes the evidence. It included the entire record. But you didn't say the way, I mean, this is just very strange. I don't think you said, we read the Ninth Circuit as saying the only thing that matters is sort of what's written in the plea or something. So this, I don't know, I'm having trouble following what you're saying now is what you argued to us. Oh, no, okay. So what we argued in the case is whether that this record is inconclusive, the court has already found that this entire record, including the testimony, including the conviction record. But couldn't that be because of the questions I was just asking earlier about it's unclear from this record whether there's been a credibility determination? If there had been a credibility determination, which maybe there is, I mean, maybe we need the BIA to tell us whether, or the IJ to tell us whether there's already been a credibility determination. But let's just take for a second an assumption that the first IJ determined that his testimony was credible. So maybe our court in the last round couldn't tell that, but let's just for a second say we resolve that and we find out that it is a credibility determination now, maybe a year from now that his testimony is true, that he didn't have the intent. Wouldn't that be enough then to make it clear that he is eligible? Not necessarily, Your Honor, because the attempt to burn, the willfully and maliciously attempts to set fire to, maliciously and willfully applies to the entire thing. The attempts to burn or to aid, that's an intent. But also, or commits, or who willfully and maliciously, who commits any act preliminary to the willful and malicious burning. And if you look at the definition on the second paragraph of CPC 455, it says that the intent can be read in there for the entire statute. I always thought that, you know, the act preliminary to the statutes like this would be going to by the materials that would then cause a fire. I mean, here he poured, put, you know, gas on a car. Right, which is why, in our view, it meets the definition of an attempt to burn. The placing or distributing of any flammable explosive. But then it would have been, then there wouldn't be uncertainty about, like we said it's ambiguous, right? Who should win? Not, it's clear. You're saying it's clear. None of this matters. It's very clear. Isn't that inconsistent with what our court said before? No, no, no, no, no. I don't think so. Because, well, because the court had already said all of this is inconclusive. It's, there's just not enough evidence. But what you're arguing today is, is that it is conclusive. No, we're saying it remains inconclusive because he hasn't supplemented the record with any evidence to clarify the inconclusiveness. So is your case whole, really whole case rest on their failure to make a proffer, not on their inability? Yes. He already had the chance before, after Pareda was decided, after this court had the benefit of Pareda in considering whether or not to remand this case. What did the BIA say to him, though? He said that, I read, I read it as the BIA saying there is no more relevant evidence. Right. Well, the board says. In a sense, it was saying, well, the Ninth Circuit said it's inconclusive. If it's inconclusive, you lose because you have the burden. End of case, goodbye. And they say, no, we can make it conclusive.  No, the board said, I believe, we can't consider testimony, additional testimony. And so. We can't consider it. Not that we don't want to consider it. Not that you haven't made a proffer to us. They said we can't consider it. But he hasn't proffered any testimony. But when the BIA said that, they were wrong, right? Because if they had made a proffer, they could consider it. But there's no. But the fact remains that they did have that opportunity and they chose not to use it. And that's a different reason for denying the claim than what the BIA gave. But but we we've cited cases to this court where under these circumstances. They've already had a chance under under Parada to make their case to clarify any inconsistency and inconclusiveness. Pardon me, inconclusiveness in the record. And they didn't do that. So as far as I could tell from all those cases you cited, the petitioner's position had never been the thing that they're trying to say. They want to argue now like he has been saying all along. Here's my testimony that I never had the intent to burn. And now he's saying there could be additional testimony showing that I had no intent to burn. But in the case, can you cite any one of those cases that where you say a proffer is needed, where it wasn't like a new idea that is coming up that needs a proffer as opposed to an old idea? But and I think the cases were there were unpublished because I couldn't find any published cases after Parada that this court has applied, except for Marina Lorena, too. Can I ask you that your opposing counsel, we're talking now about what should have happened after this court's 2021 remand. And was it your opposing counsel took the position that there was essentially no reason or incentive even prior to that time before the IJ to further develop the record on the nature of the arson offense? Do you agree with that? No, I don't. And let me let me make one point first. I think the disconnect is petitioner believes that this court that that our position is that only the Shepherd documents can be considered in meeting the government's burden of proof to for removability. When this court remanded the case to the board, it only considered the Shepherd documents for removability and not the testimony. The government's point of view is that, no, this court already had the benefit of Parada and its holdings that you can consider more than the Shepherd documents, including testimony that's already in the record. When it said, no, this record is inconclusive, the government failed to meet its burden because that's what Parada says. But because the board has not determined whether or not he's eligible for Kent, hasn't spoken on cancellation of removal, it preempted that question by by concluding that he had committed an aggravated felony. And we've decided now that he hasn't. We're going to give this back to the board for it to decide in the first instance, whether or not he's eligible for LPR cancellation of removal. On remand to the board, then the board had the same exact inconclusive record. This court had already decided was inconclusive. He had an opportunity. The board gave both sides the opportunity to submit evidence. And he didn't do it. He didn't say, well, the board didn't say submit evidence.  File any submissions. That's as broad an invitation as I can have. If the board had written a decision that said he has submitted nothing to give us reason as to why there should be further proceedings and the record as it stands is inconclusive, then this would be a pretty different case. We're stuck with the way they resolve this. But I don't think that that means that the court has to ignore what this panel, the previous panel had already decided, which is this record is inconclusive. And this is the very record that we have. But the board had before it explained to me what proffer you think he could have made that could have made it conclusive instead of inconclusive. He could have said my plea colloquy. Here's a transcript. And again, the only evidence of his conviction from the conviction record that's in this record is from the DHS below. When it was clear that it was his burden, once this was the case was back to the board, he could have said, and this is part of a motion to remand. It's kind of like a motion to reopen and a motion to remand. You have to give the board reason to remand. You have to give them evidence. So yes. So the evidence would be like a transcript of the plea colloquy. And this is a felony not a misdemeanor. So they're presumably somewhere. So it sounds like you're saying he should have submitted more shepherd documents. Not limited to that. But yes. So that seems sort of inconsistent with your admission that there was a mistake in not understanding that you can consider testimony. I think you've admitted that in your briefs to us that, yes, the BIA made a mistake in interpreting Pareto. It could have considered testimony. I didn't see anywhere in your brief an argument that it doesn't matter because testimony can never matter here. And now you're saying that today. You're saying the only thing that he can do is shepherd documents. Or am I misunderstanding? Oh, no. I'm not saying that at all, Your Honor. I'm saying first that the board didn't say that we can't consider your testimony. What it said was Pareto doesn't allow us to consider testimony. Therefore, testimony would not be helpful in your meeting your burden. And you've admitted that that's a mistake. It misread Pareto. That's correct. So what testimony could now that we know testimony can be considered, what testimony could be given to show that this is no longer an inconclusive record? That is the question I have for him as well. What testimony would he would he give that is not already in this record? OK, so your position today is no testimony could make the difference. But that is not something you argued in your brief. What I said was he made no proffer other than what is already here. And what's already here has been deemed inconclusive. He didn't say anything. Again, testimonies for limited purposes of determining which part of the statute he was convicted under, not his intent, not whether there was sufficient evidence to convict him under the statute. It is what part of it. And that question has never been answered by any additional or proffer of evidence, including testimony. I think we've taken you over your time. Thank you, counsel, for the argument. Let's hear rebuttal, please. Good morning, Your Honors. One quick point on rebuttal. The government says that the record that the Ninth Circuit already found the existing record on conclusive. But that was in the context of the government meeting its burden to show that Mr. Sandoval was removable. The standard of proof there, for example, is clear and convincing, not preponderance. And second, in this court, in its order, when it found the record inconclusive, said, quoted another Ninth Circuit case and explained what occurs when you're relying solely on the link, quote, between the charging papers and the abstract of judgment. That link must be clear and convincing. So that even sheds light that the testimony was not reviewed at that point, because they cannot review testimony for the government to meet its burden. Pareto was a cancellation of removal case. And so the government is wrong when it's saying that the Ninth Circuit finding the record before it unconclusive also applies to Mr. Sandoval meeting his burden. They're just two completely different contexts, different standards of proof, different evidence that can be evaluated. Even if you were, even if we weren't convinced by that, though, there's also the ambiguity about whether we should take the testimony as credible, right? Your Honor, we believe that the judge did already favorably credit the testimony, but. Right, but whether our court thought about that in 2021 or whatever. In the, when we said this is inconclusive, we can't tell from the face of our opinion whether we were viewing the IJ's opinion the same way you are today. That's right. It was not in the context of whether he's statutorily eligible for cancellation of removal. And at the stage below, I don't know if it was you personally, did you contemplate making a proffer or did you believe that the BIA was not letting you make a proffer? Your Honor, at that point, we believe that because he had been granted cancellation of removal and the Ninth Circuit had said it was unresolved, we're looking at whether we were arguing that he, that it should be, that ruling should be affirmed. You thought you were going to win anyway, even without a proffer, so you either didn't try or didn't think about it or chose not to. No, Your Honor, we still argued that he will merit, that he is eligible for cancellation of removal based on the existing testimony on the record. And we pointed out to the fact that he didn't intend to set anything on fire and we pointed out that he did it to get his girlfriend's attention. Thank you, both sides. And thank you for taking this case pro bono. We really appreciate your assistance. This case is submitted.
judges: Boggs, FRIEDLAND, BRESS